IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER PERRY, *on behalf of* T.H., | ) | CASE NO. 3:16 CV 770 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Jennifer Perry *on behalf of* T.H., a minor for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document order dated March 29, 2016.

[2] ECF #1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 5.

procedural[6] orders the parties have briefed their positions,[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

T.H., who was 8 years old at the time of the administrative hearing,[11] lives with his mother.[12] He attends school and has an IEP plan in place.[13]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that T.H. had severe impairments consisting of ADHD/ADD; autistic disorder; asthma/reactive airway disease and encephalopathy unspecified (20 CFR 416.924(c)).[14] The ALJ decided that the relevant impairments did not meet or equal a listing.[15]

---

[6] ECF # 10.

[7] ECF # 13 (Perry's brief), ECF #19 (Commissioner's brief), ECF # 20 (Perry's reply brief).

[8] ECF # 19-1(Commissioner's charts); ECF # 14 at 3 (Perry's charts).

[9] ECF # 14.

[10] ECF # 22.

[11] ECF # 9, Transcript ("Tr.") at 17.

[12] *Id*. at 348.

[13] *Id*.

[14] *Id*. at 17.

[15] *Id*. at 18.

The Appeals Council denied T.H.'s request for review of the ALJ's decision.[16] With this denial, the ALJ's decision became the final decision of the Commissioner.[17]

Perry on behalf of T.H. asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Perry presents the following issue for judicial review:

> **Whether substantial evidence supports the findings that T.H.'s impairments did not functionally equal a listed impairment.**[18]

The Court recommends that the ALJ's finding of no disability is supported by substantial evidence and, therefore, should be affirmed.

## Analysis

**A.     Applicable law**

*1.     Standard of review-substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by

---

[16] *Id.* at 1.

[17] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. §§ 404.981 and 416.1481.

[18] ECF # 13 at 3.

>this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
>The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Functional Equivalency for children's supplemental security income claims*

Functional equivalency to a listing for purposes of a child's claim for supplemental security income is governed by 20 C.F.R. § 416.926a. Under the regulation, for a child between 6 and 12 years of age, the inquiry is whether the impairment imposes an extreme or marked limitation in connection with six domains—acquiring and using information,

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for one's self, and health and physical well-being.[22] If a claimant has an extreme limitation in one of these domains or a marked limitation in two domains, he or she is considered functionally equivalent to a listing and, therefore, disabled.[23]

The regulations provide that the Commissioner will consider as evidence of limitations and restrictions the assessments of treating and other medical sources, information from parents and teachers, and assessments made after consultative examinations.[24] The regulations also contain guidelines for determining the extent of a claimant's limitation within each of the domains. Those guidelines will be discussed below as they relate to this case.

**B.     Substantial evidence supports the ALJ's finding that T.H.'s impairments are not functionally equivalent to a listing**

Essentially, Perry challenges the ALJ's evaluation of T.H.'s mental impairments in the domains of (1) acquiring and using information and (2) attending and completing tasks.[25] In particular, Perry argues initially that the ALJ erroneously relied on the opinions of state agency reviewing physicians who reviewed the medical file prior to the inclusion of

---

[22] 20 C.F.R. § 416.926a(b)(1).

[23] 20 C.F.R. § 416.926a(d).

[24] 20 C.F.R. § 416.926a(b)(3).

[25] ECF # 13 at 11.

purportedly significant records.[26] Perry further asserts that the ALJ erroneously gave little weight to the functional opinions of T.H.'s teachers.[27]

I will address each domain separately.

### 1. *Acquiring and using information*

In focusing on the domain of acquiring and using information, the state agency reviewers in September 2013 and January 2014 determined that T.H. had less than marked limitations in this domain.[28] The ALJ gave these opinions "great weight."[29]

He further observed as regards this domain that "no clinically significant areas of strength or weaknesses" were present in cognitive ability tests done in November 2014. In addition, he found that achievement test conducted at that same time showed that reading comprehension, written expression and math calculation were weaknesses, while language skills and articulation were age appropriate.[30] The ALJ finally cited to the report of a psychological examining source who found that T.H.'s "cognitive flexibility and abstraction were only mildly impaired" while his verbal and non-verbal intelligence was "normal."[31]

---

[26] *Id*.

[27] *Id*.

[28] Tr. at 22.

[29] *Id*.

[30] *Id*.

[31] *Id*. (citing record).

The Commissioner argues that although school records and low standardized test scores may show some evidence of a deficiency in this domain, the ALJ here relied on more than test scores "in isolation."[32] The Commissioner points to the observations and opinions of examining psychologist Dr. Thomas Evans who found in December 2013 that T.H. had "no difficulties" answering questions related to the examination.[33] Moreover, the ALJ gave great weight to the opinions of two state agency consultants who opined in 2013 and 2014 that T.H. had less than marked deficiencies in this domain.[34]

The central contested issue with this domain, however, involves the opinions not present in the record considered by the state agency reviewing sources - a 2015 opinion of T.H.'s second grade teachers, as well as records showing T.H.'s IAT referrals in 2014, his IEP assessment in 2015, and his autism diagnosis and medication records from 2014 through 2015.[35] In this regard, Perry emphasizes that the records developed after the matter had been submitted to the state agency reviewers all reflect how T.H. demonstrated significant, persistent difficulties with reading, mathematics and writing - all manifestations of his ability to acquire and use information.[36]

---

[32] ECF # 19 at 13.

[33] *See*, tr. at 473.

[34] Tr. at 22.

[35] *See*, ECF # 13 at 10 (citing transcript).

[36] *Id*. at 18.

Perry argues that the ALJ failed to evaluate the evidence noted above, particularly the standardized test scores, and failed to discuss those scores in connection with the opinion evidence from his teachers.[37] She asserts that the ALJ needed to fully explain the low test scores in connection with the relevant domains, or he should have called a medical expert to provide such an explanation.[38]

Initially, at least some of the difficulty here can be traced to the structure of the ALJ's opinion. In particular, while it is true that the ALJ does not discuss the standardized test scores with much specificity in the section of the opinion dealing exclusively with this domain,[39] he does undertake a more comprehensive discussion in the portion of the opinion that sets forth all the relevant evidence.[40] Similarly, although ALJ did not address the 2014 and 2015 opinions from T.H.'s teachers in the domain-specific section, he did evaluate each opinion in a prior portion of the opinion.[41] Further, the suggestion of autism[42] and T.H.'s history of medications[43] were also specifically noted and discussed in earlier portions of the ALJ's opinion.

---

[37] ECF # 20 at 7.

[38] *Id*.

[39] Tr. at 23-24.

[40] *Id*. at 21.

[41] *Id*. at 21, 22.

[42] *Id*. at 20.

[43] *Id*. at 19, 20.

Further, the ALJ did offer a clear statement of the precise limitations that Perry now raises - "[h]is math and reading abilities were below average;" "[b]asic reading, reading comprehension, reading fluency, math calculation solving and expression were weaknesses"[44] - while also citing the teacher reports for evidence that T.H., with individual attention and redirection when he lost attention, could complete his tasks.[45] The ALJ further made a specific finding that, based on "both medical evidence and school records," T.H's "most problematic area" was "his ability to concentrate, focus and complete tasks."[46] This is a particular finding that Perry implies was never made, but should have been.[47]

The ALJ continued his analysis by observing that "there is evidence that his medications work when taken."[48] Again, Perry argues that this statement has no support in the ALJ's opinion.[49] But, as before, that support is found in earlier passages of the opinion that noted record evidence that:

- T.H. was originally given Adderall for ADHD, but because of side effects, was changed to Concerta;[50]

---

[44] *Id*. at 21.

[45] *Id*. at 21, 22.

[46] *Id*. at 22,

[47] ECF # 20 at 7.

[48] Tr. at 22.

[49] ECF # 20 at 7.

[50] Tr. at 19 (citing record).

- "[T.H.] is not always consistently given his medication;"[51]

- T.H.'s medication was changed in late 2014 from Concerta - which "was not working as well" - to 20 mg of Vyvanse;[52]

- "[T.H's] mother reported that [T.H.] was doing better, including his mood, and was sleeping better with Vyvanse;"[53] and,

- T.H.'s 2015 examination "with the neurologist was within normal limits" and "[h]e was advised to continue taking 30mg of Vyvanse and 1 mg of Tenex."[54]

Thus, as set forth above, and contrary to Perry's assertions, the ALJ here adequately detailed the medical and opinion evidence from the period after the state agency reviewers provided their opinions, and further gave reasons, capable of meaningful judicial review, as to why, even in light of this newer evidence, T.H.'s impairment in this domain was less than marked. Accordingly, I conclude that the Commissioner's decision in this regard is supported by substantial evidence and should be affirmed.

## 2. *Attending and completing tasks*

Here, the ALJ found that T.H. had a marked limitation in this domain.[55] Perry seems to argue that the ALJ should have found that the limitation in this domain was extreme, citing to the ALJ's alleged failure to evaluate the standardized test scores, which Perry contends

---

[51] *Id*. (citing record).

[52] *Id*. at 19-20 (citing record).

[53] *Id*. at 20 (citing record).

[54] *Id*. (citing record).

[55] *Id.* at 25.

indicate marked or extreme limitations,[56] and the observations of his classroom teachers.[57] Perry also maintains that the ALJ misinterpreted the medical evidence by claiming that T.H. improved with medication, whereas Perry claims that the medication record is one of "numerous medications" that required "increasing dosage every few months," which indicates that "the medication was not effective."[58]

As to the claim that the ALJ mis-characterized the evidence as to medication, the ALJ extensively and in sequence documented T.H.'s history with medication. The final piece of medical evidence about medication is a note from T.H.'s neurologist in 2015 stating that T.H. should continue with the his present dosage of Vyvanse and Tenex.[59] Thus, rather than the ALJ erring by misunderstanding a medication record of allegedly constant changes in dosage and medications, the actual record, specifically cited by the ALJ in his opinion, is that a treating physician - a neurologist - found that T.H. in 2015 had reached a place where both his dosages and the medications were stable. Further, and as also noted above, the record cited by the ALJ includes a 2015 report by T.H.'s mother that although even with the Vyvanse T.H. continued to have some issues with attention span, concentration and focusing, T.H. was doing better with Vyvanse.[60]

---

[56] ECF # 13 at 13-15.

[57] *Id*. at 15-17.

[58] *Id*. at 17.

[59] *See*, tr. at 20.

[60] *Id*. (citing record).

Finally, as to the argument that the ALJ failed to properly analyze the test scores and opinion evidence from teachers and should have concluded that the limitation in this domain was extreme and not marked, the ALJ extensively and with particularity discussed this evidence within the opinion. In essence Perry submits that the ALJ should have given greater weight to such evidence that would support a more restrictive limitation. Such a re-weighing of the evidence is not the function of a reviewing court.

As the Sixth Circuit observed in *Buxton v. Halter*, there exists a "zone of choice" within which the Commissioner can act without interference from the reviewing court.[61] The concept of a "zone" implies that evidence having varying cumulative weight may suffice to provide substantial evidence supporting the Commissioner's decision. On one end of the zone, the objective medical evidence may be such as to convince the reviewing court that, even under a *de novo* standard, the Commissioner decided the case correctly. But, on the other end of the zone, the evidence may be less compelling. Such evidence may cause a reviewing court to question whether it would have decided the case in the same way under a *de novo* standard. Nevertheless, if the court concludes that a reasonable mind might accept that evidence as adequate to support the Commissioner's conclusion, it must affirm the Commissioner.

---

[61] *Buxton*, 246 F.3d at 772.

## Conclusion

Accordingly, for the reasons stated above, the decision of the Commissioner to deny benefits in this matter is supported by substantial evidence and, therefore, should be affirmed.

Dated: June 15, 2017                              s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[62]

---

[62] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).